IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 4:04-CR-190-A |
| | § | (NO. 4:06-CV-167-A) |
| CHANDLER GRIFFIN | § | |

MEMORANDUM OPINION
and
ORDER

After having considered the motion defendant, Chandler Griffin, ("Griffin") filed April 2, 2006, pursuant to 28 U.S.C. § 2255, the government's response thereto, and the record in No. 4:04-CR-190-A, the court has concluded that Griffin's motion should be denied for the reasons set forth below.

I.

Standard of Review

After conviction and exhaustion, or waiver, of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. United States v. Frady, 456 U.S. 152, 164 (1982); United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), cert. denied, 502 U.S. 1076 (1992). A defendant can challenge his conviction or sentence after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the errors. Shaid, 937 F.2d at 232. Section 2255 does not offer recourse to all who suffer trial errors. It is reserved for transgressions of

constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  <u>United States v. Capua</u>, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981).  In other words, a writ of habeas corpus will not be allowed to do service for an appeal.  <u>Davis v. United States</u>, 417 U.S. 333, 345 (1974); <u>Sunal v. Large</u>, 332 U.S. 174, 178 (1947).

II.

Background

On December 8, 2004, the government filed a two-count information against Griffin.  Count One charged him with possession of child pornography through interstate and foreign commerce in violation of 18 U.S.C. § 2252A.  Count Two was a forfeiture allegation, seeking forfeiture of a computer and a videotape.  On January 4, 2005, the magistrate judge fixed conditions of release for Griffin, which included a condition that Griffin would not possess any pornographic, sexually stimulating, or sexually oriented material.

On January 7, 2005, Griffin appeared before the court, waived the return of an indictment as to the counts of the information, and pleaded guilty to Count One and true to Count Two.  The plea of guilty was pursuant to a plea agreement, which provided that the government would not bring any additional charges against Griffin based on the conduct underlying and related to Griffin's plea of guilty.  The stipulation of facts on which the plea of guilty was predicated described the

2

pornographic material that Griffin possessed as including 167 visual depictions and 37 movies of what generally would be referred to as hard-core child pornography, including images that were sadistic in character and that depicted violence involving children.

    The presentence report, which was published February 14, 2005, showed a criminal history category of I and a total offense level of 22, resulting in a guideline range of imprisonment of 41 to 51 months.  The total offense level calculations included a three-level reduction for acceptance of responsibility.  On April 18, 2005, the probation officer published a second addendum to the presentence report that informed the court of a discovery by pretrial service officers during an unscheduled home visit to Griffin's home that Griffin had a laptop computer in his home that he had failed to disclose to pretrial services on which child pornography images were stored.  Earlier, Griffin had informed the supervising pretrial officer that there was no other computer in his home.  The government had successfully moved to revoke Griffin's conditions of release because of his violation of the condition prohibiting him from having possession of pornographic, sexually stimulating, or other sexually oriented material.  In the second addendum, the probation officer expressed the conclusion that Griffin's criminal conduct while on pretrial release caused him no longer to be eligible for a reduction in his offense level based on acceptance of responsibility.  Thus, his total offense level became 25, which

would have resulted in a guideline imprisonment range of 57 to 71 months were it not for the statutory maximum sentence of 60 months that could be imposed for the offense of conviction.

Upon learning of Griffin's violation of his conditions of release, the court questioned whether the plea agreement pursuant to which Griffin had pleaded guilty on January 7, 2005, should be accepted.  During a telephone conference conducted by the court on April 19, 2005, with counsel for the government and counsel for Griffin on the line, the court made known the court's tentative view that the plea agreement should be rejected because of a concern that the plea agreement would prevent the government from prosecuting Griffin for the criminal conduct in which he had engaged while free on conditions of release and because, in any event, the plea agreement would prevent the court from imposing a sentence that would serve as adequate punishment for the criminal conduct for which he had pleaded guilty (bearing in mind the statutory maximum of 60 months applicable to the offense of conviction).

At the conclusion of a hearing conducted April 22, 2005, the court decided that the plea agreement should be rejected.  After rejecting the agreement, the court informed Griffin of his right to withdraw his plea of guilty.  His counsel, Douglas C. Greene, ("Greene") informed the court that Griffin did not wish to withdraw his plea of guilty.  Counsel for the government then made known that the government intended to pursue charges against Griffin based on his criminal conduct while free on conditions of

4

release, and would be seeking an enhanced sentence in the new case. The court then gave Griffin another opportunity to withdraw his plea of guilty, taking into account what the attorney for the government had just said. After a brief conference between Greene and Griffin, Griffin informed the court that he wished to withdraw his plea of guilty. The court allowed the plea of guilty to be withdrawn, and ordered that the conviction resulting from the plea be set aside.

   On May 25, 2005, a three-count indictment, which superseded the earlier-filed information, was filed. Count One charged Griffin with receipt of child pornography through interstate and foreign commerce in violation of 18 U.S.C. § 2252A. Count Two was the same offense charged by Count One of the December 8, 2004, information, possession of child pornography through interstate and foreign commerce in violation of 18 U.S.C. § 2252A. Count Three was a forfeiture count identical to Count Two of the superseded information. On June 23, 2005, Griffin appeared before the court and entered pleas of guilty, without the benefit of a plea agreement, to Counts One and Two of the superseding indictment and true as to Count Three.

   The probation officer published a revised presentence report on August 11, 2005. The guideline calculations by the probation officer showed a criminal history category of I, a total offense level of 25, and a guideline range of imprisonment of 57 to 71 months. The probation officer did not include a reduction in the offense level for acceptance of responsibility, explaining that:

> Regarding the possession of child pornography while on pretrial supervision, the defendant acknowledged he had access to a laptop computer which contained child pornography.  According to the defendant, he had downloaded the images prior to his initial arrest, and he never deleted the pictures, nor did he tell his pretrial services officer about the computer and its contents.  The defendant stated he viewed the pornographic images after he was originally released on bond and placed on pretrial supervision.
>
> . . . .
>
> Normally, based on the fact he pleaded guilty and truthfully admitted his guilt in the offense of conviction, as well as truthfully admitted to relevant conduct, the defendant would be eligible for a reduction in the guideline calculations pursuant to USSG § 3E1.1(a),. [sic]  However, the defendant possessed [] child pornography while on pretrial supervision, which was a violation of his conditions of pretrial release, as well as a law violation.  Based on his continued criminal conduct while on bond, the defendant is not eligible for a reduction for acceptance of responsibility.

Revised Presentence Report at 8, ¶¶ 32 and 34.  Griffin objected to the probation officer's conclusion that he should be denied acceptance of responsibility.  Included in his objection was the following language:

> The primary cause for this lack of acceptance reduction is that the defendant at some point, prior to pleading guilty but while on pretrial release was in possession of his mother's laptop computer which contained some pornographic images on the hard drive of that computer.
>
>     . . . .
>
>     In our current case, Griffin seemed to have clearly demonstrated that he has refrained from any criminal behavior since the commencement of this case.  The mere fact that he possessed a laptop which contained pornographic materials which had been downloaded prior to Griffin's arrest and not accessed

6

    since that time is an insufficient basis upon which to
    deny the defendant his acceptance reduction.

Def.'s Objections to the Presentence Report at third page (Objection #5).

    The probation officer stated in paragraph 89 of the revised presentence report that an upward departure would be warranted based on Griffin's continued illegal behavior in possessing <u>and viewing</u> child pornography after he had already been caught and prosecuted with child pornography.  Griffin objected to that part of the presentence report as well.  However, Griffin's objection did not take issue with the fact recited by the probation officer in paragraph 89 that he had viewed child pornography after he had already been caught and prosecuted with child pornography.  <u>See id.</u> at second page (Objection #4).

    Griffin was sentenced at a hearing held October 7, 2005. The court overruled Griffin's objections to the revised presentence report.  Griffin was sentenced to serve a term of imprisonment of 110 months as to Count One of the indictment and of 60 months as to Count Two of the indictment, to run concurrently with each other, for an aggregate term of imprisonment of 110 months.[1]  The very nature of the child pornography criminal conduct was the primary factor that led to the imposition of a sentence higher than the guideline range. <u>See</u> Tr. of Oct. 7, 2005, sentencing hearing at 13-14.  In

---

[1] The statutory maximum sentence of imprisonment for the offense charged by Count One is 15 years and for the offense charged by Count Two is 5 years.

7

addition, the court took into account that after the defendant had pleaded guilty to the information he continued to possess and view child pornography.

On October 14, 2005, the court signed the judgment of conviction and sentence formalizing Griffin's sentence to serve a term of imprisonment aggregating 110 months.  Griffin, through Greene, filed a notice of appeal.  Greene then filed a motion to withdraw.  Two days later, Larry E. Jarrett, who is representing Griffin in this § 2255 proceeding, entered a notice of appearance of counsel for Griffin.  On February 13, 2006, the Fifth Circuit granted Griffin's unopposed motion to dismiss his appeal without prejudice.

III.

<u>Ground of the Motion and Information
Provided by Greene Related to the Facts
on Which the Motion is Based</u>

The only issue presented by Griffin's motion is:  "Whether untruthful statements made by Griffin, because of advice he received from counsel, adversely affected the sentence awarded by the Court."  Mot. at 3.  Griffin summed up the factual basis for his motion as follows:

> Griffin will demonstrate that because of his former attorney's advice to, in essence, commit a fraud upon the Court, he was sentenced to a period of incarceration substantially higher than he would have otherwise received.  Griffin will further testify that his attorney advised him to lie to the probation officer concerning whether Griffin had viewed pornography that was contained on a laptop in his house after being ordered by the court that he was constrained from such activity.  Griffin's attorney believed that if Griffin lied, Griffin would receive a three level reduction in the guidelines.  Not only did

8

>    his attorney advise Griffin to lie, he also briefed
>    Griffin's family members about the lie, and apologized
>    to the family after the expected result did not
>    materialize.

<u>Id.</u> at 4.

By order signed March 6, 2006, the court ordered, <u>inter alia</u>, that Greene file an affidavit or declaration responding to the allegations made by Griffin against, or otherwise about, him in the motion and the attachments to it. The document Greene filed in response to the order contained a denial by Greene that he ever told Griffin to lie to anyone. Greene's declaration contained the following factual recitations directly related to the issue of whether he told Griffin to lie to the probation officer:

>    A few weeks after Griffin's guilty plea to the
>    indictment, a second pre-sentence interview was
>    scheduled. Present at that interview was [sic] USPO
>    Terri Lassiter, Griffin and myself. This interview was
>    conducted at the federal jail in Fort Worth called the
>    Federal Medical Center.
>
>    When we arrived at the jail, I was casually
>    sitting with the above mentioned USPO waiting for
>    Griffin to be brought down from his cell. While
>    chatting, the aforementioned USPO commented that she
>    thought what was needed in order for her to recommend a
>    three point reduction for acceptance of responsibility
>    was that Griffin admit that he possessed the laptop and
>    that he had viewed the laptop and its contents,
>    subsequent to being placed on pre-trial release.
>
>    When Griffin came into the visitors main visiting
>    area, prior to his entering the interview room, I went
>    outside the interview room and mentioned to him the
>    information the probation officer had discussed with me
>    in regards to what she thought would allow him to get a
>    three point reduction for acceptance of responsibility.
>    We discussed this outside of the presence of the USPO.
>    I informed Griffin that the court had already concluded

9

      that he possessed a laptop on which there was child pornography. I also informed him that the pretrial officer had already testified that Griffin told him that the laptop contained some images of child pornography. We also discussed the fact that the court had already ruled and concluded that Griffin's possession of the laptop which contained child pornography, regardless of whether or not there was any proof that the images were viewed while on pre-trial release, was enough to conclude that he violated his conditions of his release. I advised Griffin to take into account those factors in deciding how to answer probations [sic] question regarding his acceptance of responsibility. We then proceeded into the interview room.

      At some point during that interview the USPO inquired of Griffin whether he had viewed the images on the laptop. My recollection is that Griffin admitted that he was aware they were on the laptop and that he had viewed those files at some point while on pre-trial release. It is my belief that Griffin was equivocating between viewing the files, but not the actual images contained within the file, in an attempt to gain a reduction for acceptance of responsibility. There appeared to be no proof that Griffin actually viewed the pornographic images while on pre-trial release and to the best of my recollection, Griffin never agreed that he did actually view those images. If his comments were construed to have that meaning, that was not the meaning Griffin had intended to convey. Moreover, had probation not insinuated to him that he would receive a [sic] acceptance reduction, he never would have tried to equivocate between viewing the files and the actual images.

Resp. to Ct. Order, Decl. at 3rd-4th pages.

IV.

<u>Analysis</u>

    The unusually worded "Issue Presented" stated by Griffin in his motion appears to be but a way of expressing the contention that he had ineffective assistance of counsel and that, as a result, he received a sentence greater than he would have

received had he had effective assistance of counsel. In order to prevail on an ineffective assistance of counsel ground, petitioner must show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Both prongs of the Strickland test must be met to demonstrate ineffective assistance. Id. at 697. To establish the first prong, petitioner must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. It is not enough to show that some, or even most, defense lawyers would have handled the case differently. Green v. Lynaugh, 868 F.2d 176, 178 (5th Cir.), cert. denied, 493 U.S. 831 (1989). For the second prong, petitioner must show that his counsel's errors were so serious as to "deprive him of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. If the petitioner cannot show that the ineffectiveness of counsel deprived him of a substantive or procedural right to which the law entitles him, he must show that the result of the proceeding was fundamentally unfair or unreliable. Williams v. Taylor, 529 U.S. 362, 392-93 (2000). Here, the record is clearly adequate to fairly dispose of the claim of ineffective assistance. Hence,

further inquiry is unnecessary. <u>Baldwin v. Maggio</u>, 704 F.2d 1325, 1329 (5th Cir. 1983), <u>cert. denied</u>, 467 U.S. 1220 (1984).

The court does not need to decide whether Greene's conduct falls within the wide range of reasonable professional assistance because the court has concluded that, even if Greene did exactly what Griffin claims he did, the sentencing outcome would have been the same. However, the court does note its serious concern with Greene's conduct. If the court accepts Greene's description of the conversation he had with Griffin immediately before Griffin was interviewed by the probation officer, the court, nevertheless, would have a concern that Greene did not conduct himself appropriately. As Greene describes the conversation, he in effect told Griffin to tell the probation officer whatever Griffin thought the probation officer would need to hear to give him an offense level reduction for acceptance of responsibility. While the court has not done independent research on the subject, the court is inclined to think that attorney conduct of that kind would border on, if not constitute, unethical conduct. Of course, if Greene, as Griffin claims, directly told Griffin to lie to the probation officer, there would be no question but that Greene's conduct was unethical, and professionally unacceptable.[2]

For the purpose of this opinion, the court is assuming, <u>arguendo</u>, that Greene's conduct was outside the wide range of reasonable professional assistance and that, therefore, the first

---

[2] An ethical lawyer, as an officer of the court, would never encourage a client to give false information to the court or any of its personnel. See <u>Nix v. Whiteside</u>, 475 U.S. 157, 174 (1986).

12

prong of the Strickland test has been met. Because of that assumption, there is no need for a hearing to determine whether the allegations of fact made by Griffin concerning what Greene told him to tell the probation officer are true.

If the facts were as Griffin claims them to be, another issue that would be presented is whether a defendant should be given relief under § 2255 from the consequences of fraudulent conduct of the defendant and his attorney directed against the court. Again, the court has not found necessary to research this subject, but the court is inclined to think that § 2255 relief never should be available to a defendant if the conduct of which he complains is fraudulent conduct against the court in which the defendant voluntarily participated.

A review of the record of everything that happened in Griffin's criminal case through his sentencing on October 7, 2005, causes the court to conclude that the fact that Griffin told the probation officer that he viewed the pornographic images on the laptop computer while free on conditions of release did not lead the court to impose a sentence greater than the court would have imposed if Griffin had told the probation officer nothing on that subject or if he had told the probation officer that he had not viewed the images. Mere possession by Griffin of the laptop computer containing the pornographic images was a violation of one of his conditions of release. There is no area of disagreement as to whether Griffin committed that violation. That violation alone was sufficient to cause the court to deny

13

Griffin a reduction in his offense level for acceptance of responsibility. This court customarily denies acceptance of responsibility to any defendant who has violated a condition of release, and the court certainly would have denied acceptance of responsibility to Griffin based on the mere fact that he possessed the laptop computer containing pornographic images.

Nor would the degree of departure above the top of the advisory guideline range have been any less if the court had not been informed that Griffin told the probation officer that he had viewed the pornographic images on the laptop computer while free on conditions of release. The court is satisfied that the statement made by Griffin to the probation officer that he viewed the pornographic images did not cause the court to impose a sentence that was greater than it would have been if he had not made that statement. The other information the court had was more than sufficient to cause the court to conclude that a sentence of imprisonment in the aggregate of 110 months was a reasonable and appropriate sentence to impose on Griffin.[3]

After a thorough review of the record, the court has concluded that, even if the court were to accept as true all facts Griffin alleges in his motion, none of the conduct Griffin attributes to Greene caused the outcome of Griffin's case to be different than it otherwise would have been.

---

[3]The court had learned before the revised presentence report was prepared that while Griffin was free on conditions of release he from time to time took the laptop computer into his bedroom, where he would stay alone for several hours. Tr. of Apr. 11, 2005, proceeding at 9.

14

V.

<u>Order</u>

Therefore,

The court ORDERS that Griffin's motion be, and is hereby, denied.

SIGNED April __12__, 2006.

                                            /s/ John McBryde  
                                      JOHN McBRYDE  
                                      United States District Judge